Gibson, J.
These cases present the question whether a prisoner who has been certified to Dannemora State Hospital as mentally ill may resort to one or another of the postconviction remedies to test the validity of the underlying criminal conviction.
The appeals focus upon People v. Booth (17 N Y 2d 681) in which we sustained a Supreme Court order which had denied, without prejudice, a cor am, nobis application made by an inmate of Dannemora State Hospital who had been transferred thereto from Clinton Prison upon being certified as insane, pursuant to section 383 of the Correction Law as then (July 30, 1963) constituted. We held, merely, that “ the trial court was correct in denying the writ of error coram nobis until petitioner’s sanity is restored”. It is now argued that Booth is not to be construed as categorically denying to every certified inmate the right to attack his conviction, by coram nobis or otherwise; but if, on the contrary, that is the meaning of Booth, the result, in appellants’ view, is the denial of equal protection. The constitutional argument proceeds upon a rationale analogous to that underlying the holding in United States ex rel. Schuster v. Herold (410 F. 2d 1071, cert. den. 396 U. S. 847), which followed Baxstrom v. Herold (383 U. S. 107) and expanded the scope of the Baxstrom rule. Of relevance, too, are the amended *348 provisions of the Correction Law (see, in particular, § 408, subds. 8, 9) enacted to comport with the Schuster decision. It was held in that case that Schuster, a convict certified to Dannemora as insane, had been denied the procedural processes to test sanity that were afforded civilians certified to mental institutions. The appellants now before us assert denial of equal protection in a different but comparable setting, asserting that they were initially imprisoned because of invalid convictions and were subsequently certified to Dannemora but are denied the procedures accorded sane prisoners to demonstrate the invalidity of the underlying convictions. Thus arises the circular problem wherein the very fact of the confinement serves to bar any attack upon its defective basis.
In respect of the problem generally, our conclusion is that prisoners in appellants’ situation who desire to undertake coram nobis or otherwise to move against their convictions be required preliminarily to proceed to have determined their competency to participate in legal proceedings. This procedure should not prove unduly burdensome upon either the prisoner or the State if undertaken within the framework of the so-called Schuster amendments to the Correction Law (see, especially, § 408, subds. 8, 9), the scope of which will not have to be greatly expanded to accommodate it. There are compelling reasons against allowing a preliminary examination of that sort in the coram nobis proceeding itself.
Brief mention may be made of the cases which preceded and followed Booth (supra). We sustained coram nobis in People v. Boundy (10 N Y 2d 518), in which the record did not demonstrate that defendant was incapable of participating in the proceedings. In the capital case of People v. Cossentino (14 N Y 2d 750), cited in Booth, our court merely withheld decision pending further psychiatric examination, this, clearly, for the defendant’s protection.
Two decisions of this court rendered subsequent to Booth have been variously construed by courts below; but in each case the facts required affirmance, without regard to the legal principle ascribed to Booth. (See People v. Saldana, 25 N Y 2d 1004; People ex rel. Ciavarelli v. Herold, 32 A D 2d 692, affd. 27 N Y 2d 826.)
*349 The Appellate Division decisions reveal disparate treatment, in each Department, as between the courts of original jurisdiction and the Appellate Division itself, the former uniformly denying coram nobis, without prejudice, in supposed compliance with Booth, and the reviewing court in each instance reversing and remitting for a hearing in respect of the defendant’s competency. (See People v. Harrison, 28 A D 2d 1097 [1st Dept., 1967]; People v. Frampton, 31 A D 2d 551 [2d Dept., 1968]; People v. McCretton, 32 A D 2d 739 [4th Dept., 1969]; and cf. People ex rel. Ciavarelli v. Herold, 32 A D 2d 692 [3d Dept., 1969], affd. 27 N Y 2d 826, supra, involving habeas corpus.)
In each of the cases now before us, the court of original jurisdiction denied the application without prejudice to its renewal when appellant’s sanity should be restored; and in each case the Appellate Division unanimously affirmed, without opinion.
The Aponte application, in coram nobis, was made upon the ground that, at the time of his plea of guilty, defendant did not comprehend the proceedings because he was insane and because he did not understand English. In support of his claim of insanity at that time no fact is alleged except his commitment to Dannemora State Hospital 18 months later. Pointing to a contrary conclusion is the statement in his brief that six months before imposition of sentence, he was, upon psychiatric examination, found not psychotic and appraised as of borderline intelligence. The conclusory allegation of his inability to understand English is likewise unsupported and no indication of any language difficulty appears in the minutes of the sentencing. The Waters application is also in coram nobis and is posited solely on the ground of defendant’s insanity at the time of his plea of guilty; and this claim rests only on the fact of his commitment to Dannemora 11 months thereafter. Thus, in Aponte, as in Waters, the mere fact of defendant’s eventual removal to the Dannemora hospital does not, alone, point up a viable question of fact as to his sanity at the time of his plea (People v. Caldo, 24 N Y 2d 847; People v. Quinones, 21 N Y 2d 885; People v. Smyth, 3 N Y 2d 184, mot. for rearg. den. 3 N Y 2d 940; People v. Glenn, 34 A D 2d 634). And in Aponte, defendant fails to indicate he could offer any objective *350 proof of his inability to understand English at the time the plea was taken (People v. Rivera, 26 N Y 2d 887; People v. Scott, 10 N Y 2d 380, 382).
In the Conover case, the application for habeas corpus is also predicated on the unsupported claim that relator is not now insane and, additionally, upon asserted defects in the indictment and arraignment cognizable only in coram nobis, and as to which relator has not, in any event, demonstrated merit. The recent redetermination of relator’s mental illness will not, of course, render academic a new application showing merit, according to the procedure, and upon the tests of trial and testimonial competency hereinafter formulated.
Although the denial of relief in each of these cases must be sustained, the exigent situation which exists generally in respect of applications of this nature requires that the uncertainty that has surrounded the application of Rooth (17 N Y 2d 681, supra) be dispelled and a procedure devised to assure access to the courts by hospital inmates found competent to prosecute postconviction remedies of demonstrable merit.
As we have indicated, the machinery set up by section 408 of the Correction Law to implement the constitutional imperatives announced in Schuster will, without extensive adaptation, accommodate appropriate procedures. Accordingly, application may he made to the Supreme Court, within the county of the hospital’s situs, for a determination of the applicant’s competency to prosecute and participate in a coram nobis application or other appropriate proceeding to challenge his conviction. There must be a factual allegation of the inmate’s competency in that respect sufficient to warrant his examination and a hearing thereon, without regard to the time limitations imposed by section 408 upon the periodic reviews there provided. The papers must also contain factual allegations sufficient to demonstrate, prima facie, the inmate’s entitlement to cor am nobis or like relief. If the court shall find, upon legally sufficient papers, first, that such entitlement has been shown prima facie and, second, that the right to a hearing upon the issue of competency has been demonstrated, it shall direct and conduct such a hearing. If the court shall find that the inmate is not in such state of mental illness as to *351 be incapable of understanding the coram nobis or like proceedings contemplated or of participating in them[1], it shall direct that the coram nobis motion or other application be made to the court in which the judgment of conviction was rendered, for hearing and determination.
Preliminary determination of competency in the coram nobis court is interdicted by strict necessity. Involved, otherwise, would be the risks and dangers inherent in the removal of prisoners certified as insane or mentally ill from a treating hospital, with consequent interruption of treatment and professional supervision. There would be presented in such case, too, the perhaps insoluble problem of properly maintaining such prisoners for indeterminable periods in crowded and unsuitable detention facilities or in civilian hospitals, under guard. The result would be to cast an intolerable burden upon an already overladen penal system. (See People v. Ganci, 27 N Y 2d 418; People v. Ali, 35 A D 2d 435.) Burdensome, too, and highly prejudicial to prompt and orderly dispositions, would be the transportation of hospital physicians to testify in courts throughout the State and the production in those courts of other hospital personnel and of hospital records. The prejudicial impact of these problems would be upon the coram nobis defendants themselves, as well as upon the inmates remaining in the hospital and the hospital staff.
A reasonable expansion of the section 408 procedures instigated by Schuster, so as to permit an evaluation by the court of a hospital inmate’s trial and testimonial competency upon appropriate application made preliminarily to, and in conjunction with a legally sufficient coram nobis application to the sentencing court, will resolve the issue as to denial of equal protection as between criminal inmates of the hospital, to whom coram nobis has generally been denied, and inmates of prisons, to whom it is allowed. To the extent that in the case of hospital inmates there will in future be required a preliminary determination does not effect any denial of equal protection. There are adequate reasons, as just noted, for the separate classification of criminally insane inmates. They cannot be treated in the same manner as prisoners under no mental dis *352 ability. Additionally, any criminal proceedings had without prior determination of a defendant’s trial and testimonial competency would always be subject to attack on the ground of his insanity. “Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.” (Baxstrom v. Herold, 383 U. S. 107, 111, supra.) In this case, the classification effected is manifestly relevant and one, indeed, that is required, in reason and of necessity.
In each case, the order appealed from should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
In People v. Aponte and People v. Waters: Order affirmed.
In People ex rel. Conover: Order affirmed, without costs.

. Cf. section 658 of the Code of Criminal Procedure.