*847 OPINION OF THE COURT
William F. Mastro, J.
The People move for an order to place respondent in a lineup regarding an incident which occurred on August 8, 1994. Respondent is currently in the custody of the State Commissioner of Mental Hygiene.
In determining this motion, the court has considered the People’s motion papers, the respondent’s papers in response and the memoranda of law of both parties.
FACTS
On September 12, 1994, respondent was arraigned on indictment No. 9779/94 charging him with robbery and assault. On September 19, 1994, respondent was remanded for an examination pursuant to CPL article 730.
Before the results of the examination were submitted, the People, on September 29, 1994, moved by order to show cause for an order to produce respondent for a lineup. The People allege that respondent assaulted two individuals on August 8, 1994. This incident is unrelated to the crime alleged in indictment No. 9779/94. The People further allege that one of the "victims” viewed photographs of people with features similar to the assailant and selected the respondent’s photograph as the perpetrator.
Defense counsel on indictment No. 9779/94 appeared before this court to oppose the People’s application. Upon the request of defense counsel, who has since been assigned to represent respondent in this matter, the court adjourned proceedings on the motion pending the results of the psychiatric examination.
Following a CPL article 730 exam, two psychiatrists found respondent mentally incompetent. On October 20, 1994, respondent was declared unfit to proceed and committed to the custody of the State Commissioner of Mental Hygiene. All proceedings under indictment No. 9779/94 were stayed (CPL 730.60 [2]).
Both parties concede that respondent is incompetent to stand trial. Even without such a concession, this court is bound by the Court’s determination of incompetency under indictment No. 9779/94 (People v Santana, 80 NY2d 92, 103).
Does respondent’s incompetence require this court to stay these proceedings requesting an order placing respondent in a lineup?
*848 INCOMPETENCY.
There is no pending accusatory instrument in this case. Without such an instrument, CPL article 730 does not govern the proceeding (CPL 730.30 [1]; Matter of Welkes v Brennan, 79 AD2d 644), and the stay under CPL 730.60 (2) does not apply.
This decision is governed by constitutional standards or considerations.
Blackstone explained the English common-law rule by stating: "if a man in his sound memory commits a capital offence, and before arraignment for it, he becomes mad, he ought not to be arraigned for it: because he is not able to plead to it with that advice and caution that he ought. And if, after he had pleaded, the prisoner becomes mad, he shall not be tried: for how can he make his defence?” (4 Blackstone, Commentaries, at 24-25.)
The Supreme Court has referred to the long history of this prohibition, and noted that some believe it may have resulted from the common-law ban on trials in absentia (Drope v Missouri, 420 US 162, 171). The theory behind the belief is that an incompetent, though physically present in the courtroom, is not afforded an opportunity to present a defense (supra). Despite this history, a majority of the Court has not articulated a rationale behind the constitutional prohibition beyond noting that "the prohibition is fundamental to an adversary system of justice” (supra, at 172). Justice Kennedy has since expanded on the rationale by stating: "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross examine witnesses, and the right to testify on one’s own behalf or to remain silent without penalty for doing so.” (Riggins v Nevada, 504 US 127, 138 [Kennedy, J., concurring in the judgment]; see also, Medina v California, 505 US 437, 456 [Blackmun, J., dissenting].)
The constitutional test that has emerged is whether the defendant " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him’ ” (Dusky v United States, 362 US 402; see also, Drope v Missouri, supra, 420 US, at 172). Whether this standard applies to proceedings before arraign *849 ment is unclear (see, Godinez v Moran, 509 US —, —, 113 S Ct 2680, 2689 [Kennedy, J., concurring in part]).
New York has long had a statute in conformity with the common-law rule precluding the trial and sentencing of incompetents (Rev Stat of NY, part IV, ch 1, tit VII, § 2 [1st ed]; Freeman v People, 4 Denio 9, 19 [1847]). New York has recognized that incompetency prevents defendants from presenting a defense or assisting counsel (4 Denio, supra, at 20; see also, People v Skwirsky, 213 NY 151, 153; People v Nyhan, 171 NYS 466).
In addition to proceedings from the filing of an accusatory instrument to sentencing, New York has found that incompetency bars proceedings on an appeal (People v Skwirsky, supra, 213 NY, at 153); conducting a hearing on a postsentence motion (People v Aponte, 28 NY2d 343); entertaining extradition proceedings (Matter of Welkes v Brennan, 79 AD2d 644, supra); and adjudicating violation of probation proceedings (Matter of Tompkins,. 146 Misc 2d 754). In contrast, New York has permitted the holding of a lineup of an incompetent (Matter of Little v Savarese, 156 AD2d 564) and adjudication of a parole revocation hearing of an incompetent (People ex rel. Newcomb v Metz, 64 AD2d 219).
In determining whether incompetency bars a particular proceeding, courts have examined both the nature of the proceeding, and the impact of the defendant’s incompetence on the proceeding (see, Matter of Welkes v Brennan, supra; People ex rel. Newcomb v Metz, supra). Where incompetency does not affect the ability to defend, or the assistance of counsel, there is no reason to bar the proceeding (Matter of Little v Savarese, supra, 156 AD2d, at 565).
PROCEEDINGS TO ORDER A LINEUP
This court must examine these issues as they relate to proceedings on a People’s application for a preindictment lineup order.[1] In order to obtain such an order, the People must show probable cause that the suspect has committed a *850 crime, that there is a "clear indication” that relevant material evidence will be found, and that the method used to secure such evidence is safe and reliable (Matter of Abe A., 56 NY2d 288, 291; People v Shields, 155 AD2d 978; People v Smith, 134 AD2d 465, 466; People v London, 124 AD2d 254, 256; Matter of Pidgeon v Rubin, 80 AD2d 568, 569).
This application is a warrant application (Matter of Abe A., 56 NY2d, at 294, supra). Although warrant applications are normally ex parte proceedings, where there is no exigency, due process requires notice to the suspect (supra, at 296; see also, People v Smith, 134 AD2d 465, supra).[2] The Court, in Matter of Abe A., did not expand on what rights this notice provides the suspect beyond affording an "opportunity to be heard in opposition before” the search takes- place (supra, at 296).
A motion to controvert the search warrant is normally a defendant’s only opportunity to contest a warrant application. Defendant’s motion is limited to probable cause within the four corners of the warrant application (People v Roberts, 195 AD2d 1018). Because of this limit, a defendant cannot testify, call witnesses, or present other independent proof on the issue of probable cause. The defense challenge is limited -to arguments on the sufficiency of the application itself (see, People v Hanlon, 36 NY2d 549, 559; People v Marshall, 13 NY2d 28, 35). In addition to arguments on probable cause, a defendant may present proof on whether a government affiant swore falsely or knowingly used false information (Franks v Delaware, 438 US 154; People v Bashian, 190 AD2d 681).
The liberty interest at issue is the same whether the challenge occurs at the time of the application, or at the time of the suppression hearing. The pendency of the investigation may raise confidentiality concerns at the time of the application that are not present at the time of a suppression hearing (see, Matter of Fingerprinting of M.B., 125 NJ Super 115, 309 A2d 3, 6). Other than dealing with confidentiality concerns, there is no reason why different procedures should apply at the time of the application than at the suppression hearing (supra).
*851 Moreover, the use of warrants is to be encouraged (People v Hanlon, 36 NY2d, at 559-560, supra). The proceedings on notice thus must not be so burdensome as to discourage the use of warrants and encourage the creation of artificial exigencies to avoid their use. Defense arguments on the sufficiency of the application and a comprehensive examination into the background of the warrant by the court should be sufficient in this proceeding (supra). Applications for lineup orders during a criminal investigation are not "occasion ] for adversarial 'mini-trials’ on the justification for routine investigative steps” (Matter of Fingerprinting of M.B., 125 NJ Super, at 122, 309 A2d, at 6, supra).
Proceedings like those in a motion to controvert a warrant are sufficient for the probable cause determination required by Matter of Abe A. (supra).
This court must resolve whether the other requirements of Matter of Abe A. call for more extensive proceedings. These other requirements are that there be a "clear indication” that relevant material evidence be found and that the method used to obtain it is safe and reliable (Matter of Abe A., 56 NY2d, at 291, supra). In context of a lineup request, a finding of probable cause is sufficient to meet the "clear indication” requirement (supra, at 297; People v Smith, 86 AD2d, at 253, supra; see also, Cupp v Murphy, 412 US 291, 295). Since there is no bodily intrusion, a lineup does not implicate any concern for safety or physical discomfort (see, People v Smith, 86 AD2d, at 254, n, supra). Without such a concern, the only substantive due process issue is the propriety of the seizure required to hold the lineup (Cupp v Murphy, 412 US, at 295, supra).
Procedural due process is a flexible standard. Different substantive rights may require different procedural safeguards (Matter of Panell v Jones, 36 NY2d 339, 342). Invasive procedures, such as the removal of a bullet, may be unreasonable even if likely to produce evidence of a crime (Winston v Lee, 470 US 753, 759). In such a case, procedural due process may require that a suspect be allowed to present witnesses and testimony on the reasonableness of the intrusion (United States v Crowder, 543 F2d 312, 316).
Where there is no bodily intrusion at issue, a suspect’s opposition may reasonably be limited to the issues that can be raised in contravening a warrant (see, Franks v Delaware, 438 US 154, supra). As noted, the challenge to a probable cause *852 finding is limited to the factual sufficiency of the warrant (People v Bashian, 190 AD2d, at 683, supra). Because of this limit, a suspect has no right to put forth evidence, cross-examine witnesses, or to testify on that issue. Without such rights, an incompetent’s inability to exercise them is irrelevant (People v Morales, 80 NY2d 450, 454-457).
A suspect may challenge the falsity of a governmental affiant with independent proof. A suspect may not challenge a nongovernmental informant (People v Bashian, 190 AD2d, at 682-683, supra). In this case, respondent was not present when the prosecution acquired the information contained in the affidavit. As such, respondent has no personal knowledge relevant to the truth or falsity of the affidavit. Without such knowledge, respondent has no ability to assist counsel. Counsel can call witnesses who may have knowledge of the issue without respondent’s assistance or examine police reports. As such, assigned counsel can present a challenge to the People’s application without the personal participation of respondent.
In light of the limited nature of the proceedings, and counsel’s ability to represent respondent without respondent’s input, respondent’s incompetence neither affects his ability to defend nor the assistance of counsel (see, People v Morales, 80 NY2d, at 457, supra; People v Bozella, 205 AD2d 790; People v Stokes, 198 AD2d 847, 848).[3] Since counsel can represent respondent’s interest on the application, notice to counsel is sufficient notice under Matter of Abe A. (supra).
Even if proceeding on the People’s application implicates respondent’s due process rights, the facts in this case weigh in favor of determining the application on the merits (see, People v Castillo, 80 NY2d 578, 582-583). Under Fourth Amendment analysis exigent circumstances are a traditional exception to the warrant requirement (see, Schmerber v California, 384 US 757, 770-771; Matter of Abe A., supra, 56 NY2d, at 295). By requesting a court order, the People are not claiming an exigency that excuses the lack of a prior judicial determination of probable cause. Despite the lack of "immediate exigency”, it is not known when or if respondent will become competent to proceed. Since a witness’ ability to make an identification will fade over time, delaying the procedure until respondent becomes competent may render the proceedings *853 meaningless (see, People v Blake, 35 NY2d 331, 337; Matter of Little v Savarese, 156 AD2d, at 565, supra). The interest of society and the suspect in having the identification procedure take place when the witness’ memory is reliable (People v Coates, 74 NY2d 244, 248; People v Blake, supra; Matter of Little v Savarese, supra) outweighs any due process concerns raised by respondent’s incompetence (see, People v Castillo, supra, 80 NY2d, at 583; Matter of Ford v Vaughan, 196 AD2d 869).
This court finds that respondent’s incompetence is not a bar to proceeding on the People’s application. The court will schedule arguments on the sufficiency of the People’s application and whether it may order the respondent to alter his appearance for the lineup (People v La Placa, 127 AD2d 610).

. Whether the People must make such an application when the suspect is in custody on unrelated charges is open to question (see, People v Whitaker, 64 NY2d 347; People v Smith, 86 AD2d 251, 253; but see, People v Smith, 134 AD2d, supra, at 465; Matter of Pidgeon v Rubin, 80 AD2d 568, supra). The People, however, have made such an application, and the defendant is entitled to the process due in obtaining a court order (see, Griffin v Illinois, 351 US 12, 18-19).

. It is worth noting that courts in other jurisdictions have found that similar preaccusatory instrument applications may be done ex parte and without notice (see, e.g., United States v Erwin, 625 F2d 838 [body cavity search]; Aziz v Warden, 1991 WL 278907 [SD NY] [lineup]; State v Avila, 1994 WL 601918 [Tex App]; State v Kalakosky, 121 Wash 2d 525, 534-535, 852 P2d 1064, 1069-1070 [blood sample]).

. This being the case, this court need not reach the constitutional issue of whether suspects have a right to counsel at the proceedings (People v Sugden, 35 NY2d 453, 461).