OPINION OF THE COURT
Charles J. Siragusa, J.
This matter is before the court on an order to show cause brought by Dennis C. Vacco, Attorney-General for the State of New York, which directs the respondent, John Horace, to show cause why an order should not be granted compelling him to supply a sample of his blood for scientific analysis. Additionally, the Attorney-General is seeking an order sealing any affidavits and exhibits submitted in connection with this application. Also before the court is a cross motion brought by the respondent, John Horace, in which he seeks an order allowing him discovery and an adjournment to obtain expert assistance to respond to the petitioner’s application.
Appearing of counsel for the Attorney-General are Jerry M. Solomon, Esq., Special Assistant Attorney-General, and Larry Bernstein, Esq., Special Assistant District Attorney. Appearing for the respondent, John Horace, is the Monroe County Public Defender’s Office, Yolanda Villa, Esq., Assistant Public Defender, and Brian Shiffrin, Esq., Second Assistant Public Defender, of counsel.
The court has had the opportunity to read and review the papers submitted in connection with the order to show cause and cross motion, and has had the benefit of hearing oral argument by Mr. Solomon on behalf of the petitioner, and Ms. Villa on behalf of the respondent.
Turning first to the request for sealing, the petitioner bases this application on three grounds. He maintains that sealing is *983 required to ensure the integrity of the investigation, to protect the respondent’s right to a fair trial, and to prevent the disclosure of Jane Doe’s identity pursuant to New York Civil Rights Law § 50-b. There is little question that public disclosure laws are to be liberally construed to allow maximum access to public records. This right of the public to inspect court records is qualified only by statutory exemptions, which are to be narrowly construed, and the inherent power the court possesses with respect to its own records to seal them as the interest of justice may dictate (see, Matter of Hynes v Karassik, 47 NY2d 659, 664).
Based upon these principles, the court rejects the first two grounds relied on by the petitioner as bases for sealing. No reasons are set forth how this investigation, which has already been the subject of much public scrutiny,, would be compromised absent sealing. Regarding the petitioner’s fair trial argument, this court has had the opportunity to participate as a trial attorney in some of the most highly publicized cases that have occurred in this county. In those matters, despite tremendous amounts of pretrial publicity, qualified jurors were readily obtained, and this court has no reason to believe that this matter, should it result in a criminal prosecution, would be any different.
However, the court does find that sealing is required on the basis of Civil Rights Law § 50-b. Subdivision (1) of that section provides "the identity of any victim of a sex offense, as defined in article one hundred thirty or section 255.25 of the penal law, shall be confidential. No report, paper, picture, photograph, court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection. No such public officer or employee shall disclose any portion of any police report, court file, or other document which tends to identify such victim”.
It was clearly and understandably the legislative intent by enactment of this statute to protect the right of privacy of victims of sex offenses. There can be no serious dispute that reasonable cause exists to believe that Jane Doe was the victim of rape in the first degree. Section 130.35 (2) of the New York Penal Law reads "A male is guilty of rape in the first degree when he engages in sexual intercourse with a female * * * [w]ho is incapable of consent by reason of being physically helpless.”
There is no question that Jane Doe, a 29-year-old female, has been in a chronic vegetative state since a car accident in *984 1985, and that because of her condition, she is physically unable to communicate in any fashion. There is also no dispute that on March 18, 1996, Jane Doe gave birth to a child. It is, therefore, logical to conclude that a male engaged in sexual intercourse with Jane Doe, without her consent, and consequently, because of her condition, "raped” her. Even a narrow construction of section 50-b (1) of the Civil Rights Law leads this court to the conclusion that sealing is mandated. As an alternative, the court has considered redaction. However, the court notes that the statute does not allow for redaction, and in any event, this court finds that redaction is not a meaningful option, since reference to Jane Doe’s identity appears throughout court papers.
The court will now turn its attention to the petitioner’s request for the respondent, John Horace, to provide a sample of his blood, which request has been necessitated by Mr. Horace’s refusal to voluntarily provide such sample. The law in this area is well settled. A statement of the principles applicable to this determination can be found in the Court of Appeals case of Matter of Abe A. (56 NY2d 288). In that case, the Court of Appeals made it clear that a formal charge is not a precondition for a judicial directive compelling a suspect to make himself available for the drawing of blood. Moreover, the court set forth three elements which must be established to secure such an order. They are: (1) Probable cause to believe the suspect has committed the crime; (2) A clear indication that relevant material evidence will be found; and (3) The method used to secure it is safe and reliable. In this regard, the issuing court must weigh the seriousness of the crime, the importance of the evidence to the investigation, and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect’s constitutional right to be free from bodily intrusion on the other. The court will deal with these requirements in reverse order.
As to No. 3, the court finds that the method proposed to secure the blood sample from the respondent, that is, the drawing of approximately 10 milliliters of blood by a phlebotomist at the Monroe County Jail, would be safe and reliable. The court also finds that the obtaining of this evidence is critical to the investigation of the crime of rape in the first degree, and also notes that no alternative means of obtaining the evidence was brought forward. Finally, this court relies on the guidance offered by the Court of Appeals in Matter of Abe A. (supra, at 299), that the taking of blood in today’s world is "hardly less routine than taking one’s temperature”.
*985 As to element No. 2, the court finds that petitioner has established a clear indication that relevant material evidence will be found. It cannot be seriously disputed that a comparison of a sample of the respondent’s blood to that of Jane Doe and the amniotic fluid of her child, through DNA analysis, would constitute probative material evidence. Should it be established through such scientific analysis that John Horace is the father of Jane Doe’s child, such evidence would certainly be admissible to establish Mr. Horace’s guilt of the crime of rape in the first degree. Moreover, the DNA testing proposed by the petitioner has generally been accepted as reliable in the scientific community, and the results of such testing have been held admissible in the courts of this State (see, People v Wesley, 83 NY2d 417).
Considering now the first element, that is, probable cause, a twofold analysis is required. This court must find probable cause to believe both that the crime of rape in the first degree has been committed, and probable cause to believe that the respondent, John Horace, is the person who committed it. As detailed above, there can be no question that probable cause exists to believe that Jane Doe was the victim of the crime of rape in the first degree. On the issue of probable cause, the thrust of the respondent’s objection to providing a sample of his blood is his contention that the petitioner has failed to establish probable cause that he committed the crime.
In that regard, it is helpful to define what probable cause is. In People v Carrasquillo (54 NY2d 248), the Court of Appeals indicated at page 254 that, in passing on whether probable cause exists, the basis for such belief must not only be reasonable, but it must appear to be at least more probable than not that a crime has occurred and that the suspect is the perpetrator. The Court went on to say "In making such a judgment, we must also bear in mind that 'in dealing with probable cause * * * we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act’.” (Citing Brinegar v United States, 338 US 160, 175.) Also helpful is the guidance offered by the Third Department in Matter of David M. (107 AD2d 884), where at page 885 the Court indicated "A finding of 'reasonable cause’ or 'probable cause’ which terms are interchangeable here (see, Veras v Truth Verification Corp., 87 AD2d 381, 384, affd 57 NY2d 947), can, by statute, be based on reliable hearsay evidence (CPLR 70.10, subd 2).” Moreover, it is well to keep in mind, as the Court of *986 Appeals in Matter of Abe A. made clear (supra, at 294), that this application is in essence a warrant application. Although warrant applications are normally ex parte proceedings, where there is no exigency, due process requires notice to the suspect. The Court of Appeals, in Matter of Abe A., did not expand on what rights this notice provides the suspect beyond affording an "opportunity to be heard in opposition before” the search occurs (supra, at 296).
This court, relying on Matter of Harris (164 Misc 2d 846, 850), concludes that this "opportunity to be heard” is limited to probable cause within the four corners of the application. The respondent’s challenge, therefore, is limited to arguments on the sufficiency of the application itself. Absent an allegation that a government affiant swore falsely or knowingly used false information, the respondent cannot testify, call witnesses, or present other independent proof on the issue of probable cause.
Applying the applicable principles of law to the matter at hand, the court finds that the petitioner has established probable cause to believe that the respondent, John Horace, committed the crime of rape in the first degree, upon Jane Doe. Moreover, the court finds that the respondent has failed to raise any issue of fact supported by sworn affidavit sufficient to challenge this prima facie showing by the petitioner. In this regard, included in the petitioner’s moving and responding papers are various affidavits upon which the court relies in making its determination as to existence of probable cause. Specifically, the court relies upon the following:
(1) Affidavits of a medical doctor licensed to practice in New York State and board certified in obstetrics and gynecology, as well as maternal-fetal medicine. This doctor indicates that Jane Doe is "a 29 year old female in a chronic vegetative state since a car accident in 1985. Because of her condition, she is physically unable to communicate in any fashion”. He also indicated that on March 18, 1996, Jane Doe gave birth to a 2 pound 11 ounce baby boy, that the child was approximately 8 weeks premature, and that based on his expert opinion, conception of the child occurred between August 10 and August 30, 1995.
(2) The moving affidavit of Jerry Solomon, Esq., in which Mr. Solomon establishes by reliable hearsay that the respondent, John Horace, had access to Jane Doe during the majority of the period in which the expert concludes that conception would have occurred.
*987 (3) Affidavits of two co-workers of the respondent, John Horace, at the residential facility in which Jane Doe resided. On August 16, 1995, one of these co-workers, a certified nurses aide, opened the door to Jane Doe’s room which was closed. After entering, she observed the respondent, John Horace, leaning over the bed with Jane Doe lying on her left side, her back to Horace. Jane Doe was naked and the bed was partially raised. The co-worker noticed "a look of surprise, a startled look on John Horace’s face”. Sometime between August 9 and August 16, 1995, a second co-worker, also a certified nurses aide, entered Jane Doe’s room and observed the respondent, John Horace, washing Jane Doe’s arm, while Jane Doe was lying naked in bed with a bed sheet on her.
(4) The moving affidavit of Jerry Solomon, Esq., which establishes by reliable hearsay, that known samples of John Horace’s handwriting, as well as a sealed, stamped envelope purportedly containing writing authored by Horace were submitted to Investigator James Beikirch of the Monroe County Sheriff’s Department, and the resulting affidavit of Investigator Beikirch. Investigator Beikirch details his qualifications as an expert in the area of questioned documents and handwriting analysis and in sum and substance, reaches the conclusion that the writings contained in the sealed, stamped envelope, purportedly written by John Horace, were in fact authored by him. This leads to the reasonable inference that saliva samples secured from the envelope and stamp were produced by the respondent, John Horace.
(5) The moving affidavit of Jerry Solomon, Esq., in which he establishes by reliable hearsay that a white lab coat bearing the inscription "John L. Horace, Ph.D.” was seized by Investigator James J. Newell from the person of John Horace pursuant to a search warrant on October 10, 1995, the same day that Investigator Newell arrested Mr. Horace on unauthorized practice charges. As indicated in Mr. Solomon’s affidavit, a blood sample was secured from the collar of the lab coat, and the court finds it is reasonable to infer that the blood was that of the respondent, John Horace. While this court does not believe that it must reach the issue in this proceeding, the court does, nonetheless, find that the lab coat was properly taken pursuant to the description of items to be seized in the warrant, and in any event, was lawfully acquired pursuant to the plain view doctrine, and additionally, properly seized as incidental to a lawful arrest. Further, the court notes that the significance of the bloodstain on the lab coat, for all practical *988 purposes, has been rendered moot by the affidavit of the Director of the Laboratory Corporation of America, LabCorp, an expert in molecular biology. In her affidavit, which is included in the petitioner’s responding papers, she indicates that "because of the small amount of genetic material obtained from the lab coat, the calculations found in the Certificate of Analysis, dated February 29, 1996, and denoted by F.S. Lab #9600706, were arrived at by using shared genetic markers from DNA derived only from the envelope.”
(6) The certified report of John P. Simich, Ph.D., Senior Forensic Serologist for the County of Erie, Department of Central Police Services Forensic Laboratory, in which Mr. Simich concludes that "based on the PCR results above, the DNA profile obtained for the genetic material in the amniotic fluid is consistent with originating from an offspring of Jane Doe (name deleted) and the donor of the DNA from the envelope/ stamp and the lab coat stain.”
(7) The affidavits from the Director of Forensic Identity at Laboratory Corporation of America, LabCorp. After conducting a DNA analysis, comparing samples from Jane Doe and the samples of the amniotic fluid from her child with samples which the court finds it is reasonable to infer came from John Horace, she concludes "for the African-American population, the paternity index is 223 to 1, the probability of paternity compared to untested, unrelated individuals in 99.55%, and the percentage of random men that would not be excluded is 0.93% ”. The probability of paternity means that it is 99.55% likely that John Horace is the father of Jane Doe’s child. Moreover, as the Director explains in her responding affidavit, "even absent the probability of paternity calculation, the Paternity Index of 223 to 1 and the percentage of random men not excluded of 0.93%, which are based upon the result reported in F.S. Lab #9600706, indicate a strong probability that the donor of the genetic material derived from the envelope is the father of the offspring denoted by the amniotic fluid. Test results derived from the submitted samples have excluded 99.07% of the African population. The donor of the genetic material obtained from the envelope has not been excluded”. The court notes that there is no dispute that John Horace is a member of the African-American population. Additionally, the Director indicates "That if a blood sample were drawn from the father of the infant, testing could be completed at a much larger number of genetic systems. It would be reasonable to assume based upon the accepted science of DNA testing and analysis *989 that RFLP testing could, be conducted which would result in a Paternity Index in the proximity of 1,000,000 to 1”.
Based, therefore, on the court’s consideration of the relevant information provided in the petitioner’s moving and responding papers, the court finds that there is probable cause to believe that the respondent, John Horace, did commit the crime of rape in the first degree upon the person of Jane Doe. Accordingly, the court directs that the respondent submit to a taking of approximately 10 milliliters of his blood by a phlebotomist at the Monroe County Jail. The court further directs that counsel for the respondent be given 48 hours’ advance notice in writing, and be allowed to attend the taking. Finally, the court directs that any reports generated by such taking be provided to counsel for the respondent as soon as they become available.
In making this determination, the court has considered the respondent’s cross motion which the court denies based on the applicable principles of law previously cited, as well as the need for proceeding without delay as set forth in the responding affidavit of Mr. Solomon.